# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION


**KRISTOFER A. STANSEL,**

      **Plaintiff,**

**vs.**                             **Case No. 4:14cv674-MW/CAS**

**WARDEN J. SOREY,**
**ASSISTANT WARDEN JERRY LONG,**
**MAJOR EDDIE JONES,**
**and CHAPLAIN DARRELL BRITT,**

      **Defendants.**

_____/


## SECOND REPORT AND RECOMMENDATION

Plaintiff, an inmate proceeding pro se and in forma pauperis, filed a

third amended complaint, ECF No. 68, in July 2016.  An Amended Report

and Recommendation, ECF No. 65, was previously entered on that

pleading and Defendants' motion to dismiss, ECF No. 42, was granted in

part.  Plaintiff's RLUIPA claims were dismissed along with Plaintiff's

requests for compensatory and punitive damages.  ECF Nos. 65, 66.  The

case proceeds against Defendants in their individual capacities only, and

for nominal damages only.  *Id.*

**Claims and Allegations of the Third Amendment Complaint**

Plaintiff's third amended complaint, ECF No. 68, asserts a Fourteenth Amendment Equal Protection Clause violation, a First Amendment Free Exercise Clause violation, and a First Amendment Establishment Clause violation. ECF No. 68 at 9. Plaintiff alleged that while incarcerated at Quincy Annex in 2014, a request was made from his "Islamic sponsor" to provide "funding" for Plaintiff to observe Ramadan and Eid al Fitr. ECF No. 68 at 7. Warden Sorey denied the request, but permitted sponsors of Christian, Jewish, and Messianic Jewish inmates to provide funding for those inmates' religious observances. *Id.* Plaintiff alleged that Assistant Warden Long could have granted the request, but denied it. *Id.* at 7-8. Similarly, Major Jones and Chaplain Britt could have permitted the Islamic sponsor to provide "funding," but also denied it. *Id.* at 7-8. Plaintiff contends that Defendants' denials "hindered" him "from practicing Eid al Fitr" and observing Ramadan. *Id.* at 6-8.

**Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Thus,

summary judgment is proper "after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which

that party will bear the burden of proof at trial." Celotex Corp. v. Catrett,

477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The

"party seeking summary judgment always bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those

portions of 'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact." Celotex

Corp., 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party must

then show[1] though affidavits or other Rule 56 evidence "that there is a

genuine issue for trial" or "an absence of evidence to support the

---

[1] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), cert. denied 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

nonmoving party's case." *Id.* at 325, 106 S. Ct. at 2554; <u>Beard v. Banks</u>, 548 U.S. 521, 529, 126 S. Ct. 2572, 2578, 165 L. Ed. 2d 697 (2006).

An issue of fact is "material" if it could affect the outcome of the case. <u>Hickson Corp. v. Northern Crossarm Co., Inc.</u>, 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). Additionally, "the issue of fact must be 'genuine'" and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (other citations omitted). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." <u>McCormick v. City of Fort Lauderdale</u>, 333 F.3d 1234, 1243 (11th Cir. 2003) (quoting <u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1023 (11th Cir. 2000)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). "[T]here is no issue for trial unless there is sufficient evidence

favoring the nonmoving party for a jury to return a verdict for that party."

Anderson, 477 U.S. at 249, 106 S. Ct. at 2511 (noting that a "scintilla of

evidence" is not enough to refer the matter to a jury).  The Court must

decide "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law."  Hickson Corp., 357 F.3d at 1260 (quoting

Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L.

Ed. 2d 202 (1986)).  All "justifiable inferences" must be resolved in the light

most favorable to the nonmoving party, Beard, 548 U.S. at 529, 126 S. Ct.

at 2578 (noting the distinction "between evidence of disputed facts and

disputed matters of professional judgment."),[2] but "only if there is a

'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380, 127

S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoted in Ricci v. DeStefano, 557

U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009)).  "Where

the record taken as a whole could not lead a rational trier of fact to find for

---

[2] Noting that deference must be given "to the professional judgment of prison
administrators," the Court stated that "[u]nless a prisoner can point to sufficient evidence
regarding such issues of judgment to allow him to prevail on the merits, he cannot
prevail at the summary judgment stage."  Beard, 548 U.S. at 530, 126 S. Ct. at 2578
(citing Overton v. Bazzetta, 539 U.S. 126, 132, 123 S. Ct. 2162, 2167, 156 L. Ed. 2d
162 (2003)).

the nonmoving party, there is no 'genuine issue for trial.'"  <u>Matsushita Elec.</u>

<u>Indus. Co.</u>, 475 U.S. at 587, 106 S. Ct. at 1356 (other citation omitted).

**The Undisputed Rule 56(e) Evidence**[3]

Between April and July, 2014, Plaintiff was incarcerated at the Quincy

Annex.  Ex. B at ¶2 (ECF No. 78-2, Long affidavit);[4] ECF No. 68 at 6.

Plaintiff is an adherent of the Muslim faith and sought to participate in

religious expression during Ramadan, including celebrating Eid al Fitr.

ECF No. 68 at 6.  The four Defendants in this case are Jacob Sorey, who

was the Warden at Liberty Correctional Institution, Ex. A at ¶1 (ECF No.

78-1, Sorey affidavit); Jerry Long, who was the Assistant Warden of

Programs at Liberty C.I., Ex. B at ¶1 (ECF No. 78-2); Eddie Jones, who

was the Major at Liberty C.I. who handled security issues, Ex. C at ¶1 (ECF

No. 78-3, Jones affidavit); and Darrell Britt, a Chaplain at Liberty

Correctional Institution.  Ex. D at ¶1 (ECF No. 81-1).  Liberty Correctional

Institution also handled the Chaplaincy needs at Liberty South Unit and

---

[3] Plaintiff was advised of his obligation to respond to Defendants' summary judgment motion pursuant to Rule 56 and Local Rule 56.1.  ECF No. 80.  Plaintiff filed a memorandum in opposition, ECF No. 86, but he did not file any evidence.

[4] Plaintiff is a pro se prisoner and does not have access to the Court's electronic docket.  Thus, references to the evidence are to the exhibit title and paragraph number, and to the electronic docket in parenthesis.

Quincy Annex.  Ex. D at ¶1 (ECF No. 81-1).  In fact, Liberty C.I. acted as

an "umbrella" for the other two "satellite facilities, Liberty South Unit and

Quincy Annex."  Ex. A at ¶4b; Ex. B at ¶4b; Ex. C at ¶4; Ex. D at ¶4b.[5]

Liberty South and Quincy Annex each house approximately 400 inmates

and have about 50 people on staff.  Ex. A at ¶4b.[6]  "In comparison, the

main unit (Liberty C.I.) has approximately 250 people on staff."  *Id.*

Only a "small number of inmates at the satellite facilities" choose to

"participate in religious holidays like Ramadan and Passover."  Ex. A at

¶4b.  "Chaplaincy staff serve all three institutions, which can be difficult

during holidays where each facility needs to have services or prayers at the

same time."  *Id.*  "Ramadan takes a lot of planning, as inmates have to be

moved prior to dawn and after sundown to eat before and after fasting,

which is an additional burden on staff and carries extra risks as it's done in

the dark."  *Id.*  This requires moving and escorting inmates "for various

prayers and other services, all of which is outside of normal operations"

and causes a disruption.  *Id.*

---

[5] The affidavits contain a scriveners error and show two paragraphs #4.  For
ease of reference, the second paragraph #4 is identified as paragraph 4b.

[6] The four affidavits submitted by the four Defendants are nearly identical.  For
simplicity purposes, only one need be referenced.

Case No. 4:14cv674-MW/CAS

To make it "easier on the staff and to consolidate resources (including donations, volunteers, supplies), Liberty Correctional Institution decided to offer inmates who want to participate in Ramadan, Passover, or similar religious events, the opportunity to be temporarily moved to the main unit for the duration of the holiday."  Ex. D at ¶4b.  "Because there are so few inmates at the satellite facilities who want to participate," deciding to transfer inmates to the main unit allowed the Department "to offer the most services to the most inmates as a group in one location."  *Id.* Ex. A at ¶4b.  "The same procedure is used for Passover and other similar events."  *Id.*  Plaintiff "was offered this opportunity during Ramadan 2014 and refused, choosing to remain at the Quincy Annex.  *Id.* at ¶5.  Plaintiff explained in his deposition that he did not want to transfer because his "sponsor was still trying to receive funding."  Ex. E at 2.

> My sponsor told all of us, you guys hold out here.  I want to try and get this funding here.  I don't want you to go to Liberty C.I., I will provide funding for you here.  So based upon that, I waited, and ended up going through the month of Ramadan with no funding.  So no, ma'am; I didn't want to go.

Ex. E at 2.

Defendants explain that Plaintiff's Islamic sponsor was Said Salmon, a volunteer at the Quincy Annex.  Ex. D at ¶2-3.  Mr. Salmon "frequently

wanted to donate various items to the facility, but did not generally follow [Florida Department of Corrections'] procedures for getting donations approved." *Id.* at 3. Departmental procedures do "not permit someone to show up with a box of books or food or other items and just drop them off unannounced at the prison." Ex. A at ¶3. Paperwork must be completed and approval obtained through the chain of command and security. *Id.*

Although Plaintiff's complaint alleged that "funding" was denied, it seems that he is complaining about not receiving donated "items and/or food for use during religious celebrations." Ex. A at ¶4. Religious groups "regularly received donations for special holidays, and the Muslims are not excluded from this, so long as the volunteer or religious organization follows the FDC procedures." *Id.* "For example, Adelph Institute frequently donates items for Jewish inmates to use during Passover, and Adelph's involvement was approved through the required channels." *Id.*

**Analysis**

**1. Equal Protection Clause**

To establish a violation of the Equal Protection Clause, it must be established that similarly situated persons were treated differently by the state actor without reasonable and non-arbitrary grounds. *See* Hendking v.

Smith, 781 F.2d 850 (11th Cir. 1986). Thus, Plaintiff must provide evidence showing that he was treated differently from similarly situated non-Muslim inmates. *See* Fuller v. Georgia State Bd. of Pardons and Paroles, 851 F.2d 1307, 1310 (11th Cir. 1988) (inmate did not demonstrate he was denied parole because of his race where, considering all the factors entering into the parole decision, he did not show himself similarly situated to paroled white inmates). Furthermore, an equal protection clam requires a Plaintiff to prove the existence of purposeful discrimination. McCleskey v. Kemp, 481 U.S. 279, 292, 107 S.Ct. 1756, 1767, 95 L.Ed.2d 262 (1987). The Supreme Court has repeatedly made clear that "[p]roof of racially discriminatory intent or purpose is required" to show a violation of the Equal Protection Clause. City of Cuyahoga Falls, Ohio v. Buckeye Community Hope Foundation, 538 U.S. 188, 194, 123 S.Ct. 1389, 1394, 155 L.Ed.2d 349 (2003) (quoting Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 265, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (citing Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976))).

Here, Plaintiff has not come forward with any evidence to show that Defendants purposefully sought to discriminate against Muslim inmates by

treating them less favorably.  Plaintiff came forward with no affidavits or other evidence which supports his *argument* that Jewish inmates received "more favorable treatment when they were allowed to [receive] donations" from the Aleph Institute for Passover . . . ."  ECF No. 86 at 2.[7]  Plaintiff also argued that Jewish inmates "were further shown more favorable treatment because they were not given the ultimatum of having to be transferred to a more dangerous environment through Passover . . . ."  *Id.*  However, no Rule 56 evidence was submitted to support those assertions.[8]  Accordingly, summary judgment should be granted in favor of the Defendants on Plaintiff's equal protection claim.

## 2.    Establishment Clause

"The Establishment Clause of the First Amendment states, 'Congress shall make no law respecting an establishment of religion.'"  U.S. Const. amend. I (quoted in <u>Hunter v. Corr. Corp. of Am.</u>, No. CV-314-035, 2016 WL 4203541, at *4 (S.D. Ga. Aug. 9, 2016), report and recommendation

---

[7] Plaintiff's memorandum is not an affidavit, is not a sworn statement, and is not evidence.  ECF No. 86.

[8] Rule 56(c) requires that a party who asserts there is a genuine dispute of fact "must support the assertion" by citing to materials in the record such as documents, depositions, affidavits or declarations, and other evidence.  Fed. R. Civ. P. 56(c)(1)(A).  Plaintiff was advised of that requirement.  ECF No. 80 at 4.

adopted, No. CV-314-035, 2017 WL 2633396 (S.D. Ga. June 19, 2017)).

"This restriction has been made applicable to states, as well as

state-created entities and their employees, through the Due Process

Clause of the Fourteenth Amendment." Holloman ex rel. Holloman v.

Harland, 370 F.3d 1252, 1284 (11th Cir. 2004) (citing Cantwell v.

Connecticut, 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940)).

"The Establishment Clause applies not only to state statutes, but acts and

decisions of individual governmental actors" as well. Lee v. Weisman, 505

U.S. 577, 587, 112 S.Ct. 2649, 2655, 120 L.Ed.2d 467 (1992) (cited in

Holloman, 370 F.3d at 1284). "The clearest command of the Establishment

Clause is that one religious denomination cannot be officially preferred over

another." Glassroth v. Moore, 335 F.3d 1282, 1299 n.3 (11th Cir. 2003)

(quotation omitted, quoted in Smith v. Governor for Alabama, 562 F. App'x

806, 816 (11th Cir. 2014)).

The Eleventh Circuit analyses Establishment Clause violations under

the Lemon test:[9] "(1) the program must have a secular legislative purpose;

---

[9]  The Lemon test is a three-prong test set forth in Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). *See* Smith v. Governor for Alabama, 562 F. App'x 806, 816 (11th Cir. 2014) (applying Lemon test to prisoner's claim challenging "faith based honor" dormitory).

(2) the principal or primary effect is one that neither advances nor inhibits religion; and (3) the program does not foster an excessive government entanglement with religion." Smith, 562 F. App'x at 816. Construed liberally, Plaintiff's Establishment Clause claim rests on his assertion that Defendants showed "favoritism" towards other religious groups and only denied the Muslims the opportunity to donate items. ECF No. 68 at 6-8. However, Plaintiff has not provided any evidence to show that Jewish inmates or other groups were given favoritism or preferential treatment. To the degree Plaintiff makes an additional argument in response to summary judgment that Defendants also demonstrated favoritism by only requiring Muslim inmates to be transferred and permitted Jewish inmates to stay at Quincy Annex, it is insufficient because Plaintiff provided no *evidence* in support of that argument. Plaintiff has not shown that Defendants acted to advance or inhibit religion and summary judgment should be granted in Defendants' favor on this claim as well.

## 3. Free Exercise Clause

"A prison regulation, even though it infringes the inmate's constitutional rights, is an actionable constitutional violation only if the regulation is unreasonable." Hakim v. Hicks, 223 F.3d 1244, 1247 (11th

Cir. 2000) (citing <u>Turner v. Safley</u>, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987); <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (applying Turner standard to free exercise of religion claim)).  Using <u>Turner</u>, Courts evaluate four factors in determining whether an inmate demonstrates a free exercise claim. <u>Hakim</u>, 223 F.3d at 1247 (citing <u>Malik v. Brown</u>, 71 F.3d 724, 727–29 (9th Cir. 1995)).  The four factors are: "(1) whether there is a 'valid, rational connection' between the regulation and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally; and (4) whether the regulation represents an 'exaggerated response' to prison concerns."  <u>Hakim</u>, 223 F.3d at 1247-48 (other citations omitted).

The first factor has been met.  Defendants demonstrated that there is a valid, rational connection between its requirement to go to Liberty Correctional Institution to observe Ramadan and legitimate security interests.  There was insufficient staff at the satellite institutions to monitor

pre-dawn and post-sunset inmate movements and, additionally, chaplaincy staff could not be in three places at one time. Only a small number of inmates would be effected by transferring them to one nearby institution for a brief period of time so as to participate. Furthermore, consolidating volunteer services benefitted both the prisoners and the volunteers.

Plaintiff had an alternative whereby he could participate in Ramadan, but he chose to remain at Quincy Annex, hoping that his Sponsor could donate items there. Plaintiff made a choice to stay and refused the alternative option. The second factor was also satisfied.

Third, accommodating Plaintiff's desire to participate in Ramadan by remaining at Quincy impacted prison staff and resources. Defendants have shown that they lacked sufficient staff to accommodate all prisoners at three separate institutions who wanted to participate in Ramadan. By combining prisoners at one location for the duration of Ramadan, the impact of prisoner movement outside of normal operations was minimized. Prisoners could participate and exercise their First Amendment right to freely practice their religion by transferring to Liberty Correctional Institution. The third factor is also met.

Finally, Plaintiff has not demonstrated that the choice to consolidate inmates was an exaggerated response. There were security interests to consider and conserving resources which were best served by the decision to consolidate. Moreover, there has been no evidence submitted that Plaintiff's sponsor, Mr. Salmon, complied with the requirements of the Department which would permit donating items needed for Ramadan or the Eid al Fitr, even if sufficient staff were in place to accommodate Muslim inmates at Quincy Annex. Summary judgment should be granted in favor of the Defendants on the Free Exercise Clause claim as well.

**RECOMMENDATION**

It is **RECOMMENDED** that the summary judgment motion, ECF No. 78, be **GRANTED** and judgment entered in their favor on all Plaintiff's remaining First and Fourteenth Amendment claims.

**IN CHAMBERS** at Tallahassee, Florida, on August 8, 2017.

 s/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

Case No. 4:14cv674-MW/CAS

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). **Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.** If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.